



Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT

JUL 15 2005

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

FILED
CLERK US DISTRICT COURT

JUL 13 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE A. THOMPSON,<br><br>           Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration,<br><br>          Defendant. | NO. CV 03-3482  (Mc)<br><br>MEMORANDUM OF DECISION<br>AND ORDER IN A SOCIAL<br>SECURITY CASE |

The plaintiff, STEVE A. THOMPSON, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner"). For the reasons set forth below, this court finds that the decision of the Commissioner that the plaintiff is not disabled and not entitled to benefits is not based upon substantial evidence. The matter is, therefore, remanded to the Commissioner for further proceedings.

## BACKGROUND

The plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act") on September 22, 1994.

1  [Administrative Record ("AR") 40-43, 44-45.]   The Commissioner denied
2  the applications initially and on reconsideration.   [AR 57-60, 65-68.]
3  At the plaintiff's request, an administrative hearing was held before
4  Administrative Law Judge Jan Donsbach (the "ALJ") on May 30, 1996.
5  [AR 26-39.]   On July 20, 1996, the ALJ filed a decision concluding
6  that the plaintiff was not under a disability as defined in the Act at
7  any time through the date of the decision.   [AR 12-16.]   The Appeals
8  Council denied the plaintiff's request for review of the ALJ's
9  decision.   [AR 4-6.]   The plaintiff filed a complaint with the
10 district court [CV 98-2201-LGB (Mc)], and the matter was remanded to
11 the Commissioner for further proceedings.   [AR 263-79.]   A second
12 hearing was held on July 23, 2001. [AR 204-62.]   The ALJ again denied
13 benefits by decision dated August 27, 2001.   [AR 183-95.]   The
14 plaintiff appealed the decision, but the Appeals Council found no
15 basis to assume jurisdiction.   [AR 169-71.]   The decision of the ALJ
16 stands as the final decision of the Commissioner.

17      Thereafter, the plaintiff filed the present action.   The
18 plaintiff and the Commissioner have consented to proceed before a
19 United States Magistrate Judge.   The parties have entered into a Joint
20 Stipulation setting forth their arguments.

21                         **STANDARDS OF REVIEW**

22      The court must sustain the findings of the Commissioner unless:
23 (a) they are not supported by substantial evidence in the record as a
24 whole; or (b) the Commissioner applied an improper legal standard.
25 See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human
26 Services, 803 F.2d 1071, 1072 (9th Cir. 1986).   Substantial evidence
27 means "more than a mere scintilla" but less than a preponderance.
28 Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

-2-

1 L.Ed.2d 842 (1971); <u>Desrosiers v. Secretary of Health and Human</u>
2 <u>Services</u>, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence"
3 is evidence a "reasonable mind might accept as adequate to support a
4 conclusion." <u>Richardson v. Perales</u>, 402 U.S. at 402; <u>Gordon v.</u>
5 <u>Secretary of Health and Human Services</u>, 803 F.2d at 1072.

6      This court must review the record as a whole and consider adverse
7 as well as supporting evidence. See <u>Green v. Heckler</u>, 803 F.2d 528,
8 529-30 (9th Cir. 1986). Where evidence is susceptible of more than
9 one rational interpretation, the court must sustain the Commissioner's
10 decision. See <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.
11 1984).

12                **THE FIVE-STEP SEQUENTIAL EVALUATION**

13      The Commissioner has established a five-step sequential
14 evaluation for determining whether a person is disabled. First, the
15 Commissioner determines whether the person is engaged in "substantial
16 gainful activity." If so, the Commissioner denies disability
17 benefits. Second, if the person is not so engaged, the Commissioner
18 determines whether the person has a medically severe impairment or
19 combination of impairments. If the person does not have a severe
20 impairment or combination of impairments, the Commissioner denies
21 benefits. Third, if the person has a severe impairment, the
22 Commissioner determines whether the impairment meets or equals one of
23 a number of "listed impairments." If the impairment meets or equals a
24 "listed impairment," the Commissioner conclusively presumes that the
25 person is disabled. Fourth, if the impairment does not meet or equal
26 the "listed impairments," the Commissioner determines whether the
27 impairment prevents the person from performing past relevant work. If
28 the person can perform past relevant work, the Commissioner denies

benefits.  Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to disability benefits only if he or she is unable to perform other work.  See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

### FINDINGS OF THE ALJ

The plaintiff was born May 17, 1951.  [AR 44.]  The plaintiff has a GED [AR 183; see AR 27] and past relevant work experience as a store laborer, electrician helper, structural mechanic/machine helper, and construction worker.  [AR 183].  The plaintiff alleges that he has been unable to work since September 1, 1994, because of "nerve damage-overextended nerves rt/side."  [AR 81.]  More specifically, the plaintiff complains of pain in the neck [AR 228] and pain and lack of strength in the right upper extremity.  [AR 229-30].

The plaintiff's date last insured ("DLI") is December 31, 1997.[1] [AR 193; see AR 73.]  The ALJ found that the plaintiff had not engaged in substantial gainful activity since September 1, 1994.  The ALJ found that the plaintiff had mild cervical spondylosis, a right brachial plexus injury, status post discectomy, and intraspinatus tendonitis but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

The ALJ determined that the plaintiff's subjective complaints were not fully credible and that the plaintiff retained the residual

---

[1] In order to obtain disability insurance benefits, the plaintiff must establish that he became disabled on or before the date last insured.  Morgan v. Sullivan, 945 F.2d 1079, 1080 (9th Cir. 1991).

-4-

functional capacity ("RFC") to lift no more than ten pounds frequently or twenty pounds occasionally with the right arm.[2]  The ALJ further found that the plaintiff could not use the right arm above shoulder level for more than one-third of the time.  The ALJ found that the plaintiff was not limited in the use of the left arm.  The ALJ further found that the plaintiff could climb ropes and scaffolding only occasionally but that there were no limitations of fine or gross manipulation of either hand.

The ALJ concluded that the plaintiff was unable to perform his past relevant work and that there was no evidence that the plaintiff had skills transferable to other work.  However, the ALJ determined that, based upon the plaintiff's exertional capacity for light work and considering his age, education, and work experience, Rule 202.14 of Table No. 2 of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."  [AR 194.]  Although the plaintiff's non-exertional limitations do not allow the plaintiff to perform the full range of light work, using the above rule as a framework for decision-making in combination with the testimony of the vocational expert, the ALJ found that there were a significant number of jobs in the national economy that the plaintiff could perform.  These jobs do not involve working with tools and would not be ruled out even if the ALJ "were to identify a mild cognitive dysfunction that results in a limitation to unskilled work."  [AR 194-95.]  Accordingly, the ALJ concluded that the plaintiff was not under a ///

---

[2] The plaintiff writes with his left hand.  However, he testified that his "main power arm is [his] right."  [AR 231.]

1  "disability" as defined in the Social Security Act at any time through
2  the date of his decision.   [AR 195.]

### THE PLAINTIFF'S CONTENTIONS

4       The plaintiff contends that the ALJ's assessment of the
5  plaintiff's residual functional capacity is not based upon substantial
6  evidence.   The plaintiff contends that the ALJ improperly relied upon
7  the opinion of the medical expert, Dr. William Cable, and that the ALJ
8  failed properly to assess the plaintiff's subjective complaints.   The
9  plaintiff further argues that the ALJ failed to propose a proper
10 hypothetical to the vocational expert which "set out all of the
11 plaintiff's verified impairments and limitations."   [Joint Stipulation
12 at 41.]   Next, the plaintiff argues that the ALJ failed fully and
13 fairly to develop the record because the ALJ failed to order a
14 consultative psychological examination and because the ALJ failed to
15 comply with the order of this court by failing to obtain a medical
16 source statement from the plaintiff's treating physician.

### DISCUSSION

#### The ALJ's failure to order a consultative psychological examination

19      The plaintiff contends that the ALJ failed in his duty fully and
20 fairly to develop the record by failing to order a psychological
21 consultative examination.   The plaintiff contends that "there was
22 sufficient medical evidence of a mental component to plaintiff's
23 chronic pain syndrome so the ALJ should have ordered a psychological
24 evaluation for the plaintiff."   [Joint Stipulation at 43.]   However,
25 the plaintiff's argument lacks merit.
26 ///
27 ///
28 ///

1      First, although the plaintiff has complained of pain resulting
2    from his injuries, there is no diagnosis of chronic pain syndrome as
3    the plaintiff alleges.[3]

4      Nevertheless, the plaintiff argues that because the objective
5    findings do not substantiate a physical impairment capable of
6    producing the alleged pain, the ALJ should have investigated the
7    possibility of a mental impairment as the basis for the pain, citing
8    SSR 88-13.  [Joint Stipulation at 43-44.]  However, SSR 88-13 has been
9    superceded and is no longer in effect.  Moreover, in similar
10   circumstances, the Sixth Circuit "decline[d] to impose an affirmative
11   duty upon the Secretary to conduct psychological examinations on all
12   claimants for whom the source of pain is not objectively proven to be
13   organic."  <u>Kimbrough v. Secretary of Health and Human Services</u>, 801
14   F.2d 794, 797 (6th Cir. 1986).

15     Even acknowledging that the ALJ has an independent obligation
16   fully and fairly to develop the record [<u>Tonapetyan v. Halter</u>, 242 F.3d
17   1144, 1150 (9th Cir. 2001)], this does not mean that every incidental
18   symptom of insomnia or depression requires the ALJ to order a
19   consultative psychiatric or psychological examination.  The ALJ's
20   decision to order a consultative examination is discretionary.  <u>See</u>
21   <u>Reed v. Massanari</u>, 270 F.3d 838, 842-43 (9th Cir. 2001).  Where, as
22   here, the plaintiff "presented no objective evidence supporting the
23   conclusion that he suffers from [a mental impairment]," there was no
24   abuse of discretion.  <u>Diaz v. Secretary of Health and Humans Services</u>,
25   898 F. 2d 774, 778 (10th Cir. 1990).  A few treatment entries in 1995

26

27   _____
28        [3] Likewise, the plaintiff has never been diagnosed with failed
     back syndrome.  [<u>See</u> Joint Stipulation at 25-27.]

-7-

1 indicating that the plaintiff suffered from insomnia and stress do not
2 suggest anything more than a transitory condition with no indication
3 of the existence of a significant mental impairment or mental
4 dysfunction.  The plaintiff himself did not mention or describe any
5 mental impairment when he applied for benefits, nor did he testify to
6 any mental impairment.  The ALJ found, therefore, that there was
7 nothing in the record to suggest any medically determinable mental
8 impairment.  [AR 190.]

9     Even so, the ALJ clearly considered the possibility of a mental
10 impairment but found that even if he "were to identify a mild
11 cognitive dysfunction that results in a limitation to unskilled work,"
12 the jobs which the vocational expert cited would not be affected.  [AR
13 195.]

14     There was no error in the ALJ's failure to order a consultative
15 psychiatric examination.

16 **The ALJ's assessment of the plaintiff's credibility**

17     Once the plaintiff has established by objective or clinical
18 findings the existence of a medically determinable impairment which
19 reasonably accounts for the symptoms alleged, although not necessarily
20 the degree of symptoms alleged, the ALJ may not reject symptom
21 allegations, absent affirmative evidence of malingering, without
22 providing "specific findings stating clear and convincing reasons for
23 doing so."  Batson v. Commissioner of the Social Security
24 Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

25     The plaintiff contends that the ALJ failed to provide legally
26 sufficient reasons for finding that the plaintiff was not entirely
27 credible.

28 ///

-8-

1    While acknowledging that the record indicates that the plaintiff
2  has complaints of pain, the ALJ found that the plaintiff was
3  exaggerating the degree of pain.  First, the ALJ noted the lack of
4  objective findings.  This finding is consistent with the opinion of
5  the plaintiff's treating physician, at least for the period following
6  recuperation from the plaintiff's May, 1998. surgery.  (Infra.)  [AR
7  341.]  Although the lack of objective findings cannot be the sole
8  reason for disbelieving the plaintiff, it is, nevertheless, one of the
9  valid considerations.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th
10  Cir. 1991).

11    The ALJ also noted that the complaints of pain described in the
12  record are not consistent with the frequency and intensity suggested
13  by the plaintiff at the hearing.  The ALJ observed that the
14  plaintiff's testimony of losing control of the right upper extremity
15  is not corroborated in the record.[4]  [AR 191; see AR 229.]  The ALJ
16  also found that, although the plaintiff alleges anxiety and depression
17  secondary to pain, such allegations are also not substantiated in the
18  record.  [AR 191.]  The ALJ reasoned that if the plaintiff "were
19  having as much pain as he now alleges, it is reasonable to assume that
20  he would have mentioned that to the treating doctors."  [Id.]

21    The ALJ further found that the plaintiff's testimony suggested
22  that his basic problem was that he wants to work with tools again, but
23  the plaintiff claims that he cannot do so with his right hand.  The
24  ALJ found that there is nothing in the record to substantiate such a

25

26    [4] The plaintiff, did, however, complain to a physical therapist
27  in January, 2001, that his right upper extremity went out upon
   reaching [AR 343], but no such complaints were related to his
28  physician on February 2, 2001 [AR 341].

1  complaint or that the plaintiff has any limitations whatsoever in the
2  use of tools.  [Id.; see AR 246; see also AR 160, 324 (normal grip);
3  see also AR 343.]   The ALJ further determined that the plaintiff's
4  complaints were not consistent with the treatment he received, noting
5  that the plaintiff was being treated with anti-inflammatory
6  medications.  [AR 191; see AR 332, 341.]  This finding is supported by
7  substantial evidence for the period following recovery from the
8  surgery.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)("[R]ather
9  minimal conservative treatment" considered valid in assessing
10  credibility).

11      The ALJ also questioned the plaintiff's reasons for not currently
12  taking any medication for pain.  "His claim that he cannot take
13  stronger medication because of the fear that he will be arrested for
14  driving under the influence is not convincing because he testified
15  that he does not drive, and his mode of transportation is walking.  It
16  is reasonable to assume that if the claimant's condition were as bad
17  as he claims, he would have sought stronger medication to alleviate
18  his suffering."  [AR 192; see AR 241.]  Although the plaintiff also
19  testified that the medication which was prescribed did not help him
20  [AR 242], and, therefore, he had not taken the medication since before
21  the surgery, there is no indication in the documentary record that the
22  plaintiff then complained of such sedating side effects or
23  ineffectiveness other than that Naprosyn was of "no help" [AR 297].
24  There is no indication that the plaintiff asked for alternative
25  medication.  Thus, the ALJ's finding in this regard is substantially
26  supported by the record.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th
27  Cir. 1995)(The ALJ provided sufficiently specific reasons to support
28  his credibility finding, noting "the fact that Orteza suffers no side

1  effects from the prescription drugs he takes, and that Orteza has not
2  required prescription pain medication").

3     The ALJ also found that the plaintiff's daily activities are "not
4  consistent with his allegation of disabling pan, and are not
5  inconsistent with a capacity for light work." [AR 192.]  The
6  plaintiff argues that such "self care activities do not establish an
7  ability to engage in substantial gainful activity," citing Waters v.
8  Bowen, 709 F. Supp, 278, 284 (D. Mass. 1989). [Joint Stipulation at
9  36.]  However, the Court in Fair, 885 F.2d at 604 found that
10 '[a]lthough Fair asserted that he was "confined primarily to resting
11 and reclining about his own home,"' Fair's testimony that '"he remains
12 capable of caring for all his own personal needs, the performance of
13 his own routine household maintenance and shopping chores, riding
14 public transportation, and driving his own automobile"' was one of the
15 valid considerations among others cited by the ALJ for finding Fair
16 not credible.  [See AR 343.]  Moreover, even if the ALJ's finding
17 concerning the plaintiff's daily activities were improperly
18 considered, in citing the lack of objective findings, the lack of
19 corroboration in the medical record for the degree of symptoms
20 alleged, the conservative nature of treatment post-surgery, and the
21 inadequately explained failure to take pain medication, the ALJ,
22 nevertheless, cited clear and convincing reasons for finding the
23 plaintiff not entirely credible.

24 **The testimony of the medical expert**

25     In assessing the weight given to a medical opinions, greatest
26 weight is generally given to the opinions of a treating physician over
27 the opinions of those of non-treating physicians.  This is so because
28 the treating physician is employed to cure and has a greater

- 11 -

1  opportunity to know and observe his patient than a physician who only
2  saw the claimant on one occasion.  The opinion of an examining
3  physician, in turn, is generally entitled to greater weight than the
4  opinions of a physician who has not examined the claimant.  <u>Andrews v.</u>
5  <u>Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).  Last in this hierarchy
6  of medical opinion is the opinion of a non-examining physician such as
7  Dr. Cable.   However, the opinion of even a non-examining physician
8  can constitute substantial evidence only when it is supported by other
9  evidence in the record and is consistent with it.  <u>Id.</u>

10      At the second hearing, the ALJ sought the testimony of Dr. Cable,
11  a Board Certified Neurologist.  [AR 335.]  Dr. Cable testified by
12  telephone.  [AR 204.]  The ALJ gave Dr. Cable's opinions "the greatest
13  weight," finding that Dr. Cable's residual functional capacity
14  assessment was "based on providing the claimant every benefit of the
15  doubt. . . ."  [AR 189.]  The ALJ noted further that neither the
16  consultative examiner, Dr. Thomas P. Di Julio, who examined the
17  plaintiff on November 17, 1994, "nor any treating doctor found the
18  claimant more limited."  [<u>Id.</u>]

19      The plaintiff argues that the opinion of Dr. Cable is not based
20  upon substantial evidence.  The plaintiff's argument has merit.

21      Dr. Cable testified, <u>inter alia</u>, that MRI findings do not
22  necessarily confirm the existence of pain.  [AR 212, 214.]  However,
23  Dr. Cable did not deny that there is evidence of pain: "It's clear
24  that there is pain - ongoing pain there" [AR 215], at least at the
25  time of the plaintiff saw his doctor on October 17, 1997 [AR 215-16].
26  The ALJ likewise acknowledged that there is evidence of an underlying
27  medical impairment which may be expected to cause the symptoms alleged
28  when he found that the plaintiff had mild cervical spondylosis, a

1  right brachial plexus injury, status post discectomy, and
2  intraspinatus tendonitis.  [See AR 190.]  The issue then is the
3  severity of the symptoms and the degree of functional limitations.
4  [AR 217.]

5       The difficulty with any assessment of function in this matter is
6  that at the time of the second hearing, nearly seven years had elapsed
7  since the plaintiff's alleged date of onset.  Nevertheless, the
8  plaintiff essentially contends that, except for a brief period of
9  improvement following surgery in May, 1998, his condition had remained
10 the same and that he had been unable to work throughout the entire
11 period at issue.  Dr. Cable likewise made no distinction between the
12 various time periods in citing the findings except for a brief period
13 in 1990 following the plaintiff's motorcycle accident.  However, the
14 plaintiff returned to work after that incident, and this period is not
15 at issue.  [AR 217-18; AR 218-19.]  Otherwise, Dr. Cable found that
16 the plaintiff was capable of light work throughout the entire period
17 since the plaintiff's alleged onset date.  [See AR 207.]

18      As support for his assessment of the plaintiff's functional
19 capacity, Dr. Cable noted that the plaintiff's pain was treated with
20 anti-inflammatory medication but that "[t]he [clinic] notes don't
21 describe severe or excruciating pain."  [AR 217.]  Dr. Cable further
22 testified that "the records even prior to that surgery of May of '98
23 indicated that the strength, sensation, and reflexes in his arms were
24 normal."  [AR 213.]  Dr. Cable reiterated that "[t]he Harbor records
25 indicate either that the strength was normal or that there is only
26 very mild weakness in the upper right arm.  There was—for example, the
27 type of things that you expect with nerve injury is to see muscles
28 shrink and there weren't signs of atrophy or reflex change.  Sensation

- 13 -

1   was described as being intact." [AR 220.] In apparent reliance upon
2   this testimony, the ALJ repeatedly asserts that "[c]linical
3   examinations, however, revealed minimal abnormalities." [AR 184; AR
4   190.]

5       However, substantial evidence only supports Dr. Cable's testimony
6   and the ALJ's conclusions for the period after the plaintiff's
7   recuperation from his May, 1998, surgery.

8   <u>Period from the alleged onset date to February, 1996</u>

9       The plaintiff sought treatment at Harbor-UCLA Medical Center in
10  approximately January, 1995. An MRI of the cervical spine taken in
11  June, 1995, revealed mild retrolisthesis at C5-C6, moderate right disc
12  protrusion at C5-C6 with moderate impression of the cervical cord and
13  moderate-marked right neural foraminal stenosis, moderate left neural
14  foraminal stenosis at C5-C6 and moderate bilateral neural foraminal
15  stenosis at C6-C7. [AR 162-63.] Surgery was offered at that time.
16  [AR 158.] However, the plaintiff indicated that he did not desire
17  surgery until his functioning decreased, and the plaintiff refused
18  pain medication as well. [<u>Id.</u>]

19      Notwithstanding the MRI findings, Dr. Cable testified generally
20  that the clinical findings did not support the diagnoses. [AR 212;
21  <u>see</u> AR 220.] However, these treatment records indicate that for the
22  period between January, 1995, until February, 1996, there were
23  findings of abnormal sensation [AR 138, 158, 160] and some decrease in
24  muscle mass of the shoulder and upper arm [AR 141] although there was
25  generally normal or nearly normal motor power [AR 158 160, 161].
26  Reflexes were also found to be decreased. [AR 160, 161.] Thus, Dr.
27  Cable's testimony that there were no signs of "muscles shrink[ing],"
28  ///

-14-

1  "signs of atrophy or reflex change" or abnormal sensation is not
2  supported by the record.[5]  [AR 220.]

3  The period from February, 1996, to December, 1998

4      There are no records of treatment between February, 1996, until
5  October, 1997, when the plaintiff was seen in the emergency room for
6  an exacerbation of degenerative disc disease.  Medications were
7  provided, and the plaintiff indicated that he now wished to go forward
8  with the surgery.  [AR 282.]  A second MRI was performed on November
9  4, 1997, which revealed dessicated cervical discs and degenerative
10 spondylitic changes at the C5-C6 and C6-C7 levels with mild to
11 moderate spinal stenosis at these levels with no abnormal signal
12 within the spinal cord.  [AR 285-86.]  A course of three epidural
13 steroid injections was planned [AR 287], but after only one injection
14 in February, 1998 [AR 296], surgery was scheduled when the relief
15 obtained from the injection lasted only two days [AR 297].

16     On May 22, 1998, the plaintiff underwent a C6 carpectomy,
17 anterior diskectomies at C5-6 and C6-7, and anterior spinal fusion
18 with iliac crest bone graft and instrumentation.  [AR 303.]  The
19 plaintiff was then seen in follow up until approximately December,
20 1998.

21     Notwithstanding the MRI, Dr. Cable could not explain why surgery
22 was performed lacking a "precise statement from the physicians as to
23 why they did the surgery."  [AR 213.]

24 _____

25     [5] As support for his conclusion, Dr. Cable cited the treatment
   record of August 21, 1995, which indicated that there was no shoulder
26 pain, and the plaintiff denied dropping objects.  [AR 210.]  However,
   this treatment entry contradicts Dr. Cable's assessment that there
27 were no sensory changes or reflex abnormalities.  There was a sensory
   deficit at the C5 distribution, and right biceps reflex was decreased.
28 [AR 160.]

1    It is clear, however, that the plaintiff's treating physicians
2    believed that the objective and clinical findings as well as
3    subjective complaints continued to be sufficiently severe to warrant
4    surgery.  During the period between October, 1997, until the
5    plaintiff's surgery in May, 1998, these findings included intermittent
6    evidence of decreased sensation [AR 287, 293, 297], abnormal reflexes
7    on the right [AR 284], and motor strength generally found to have
8    decreased [AR 282, 284, 288, 290, 293, 297, 317].[6]  If Dr. Cable's
9    opinion contradicts the treating source's assessment concerning the
10   need for surgery, his opinion is not consistent with the other
11   evidence and does not constitute substantial evidence.  Reliance upon
12   Dr. DeJulio's 1994 consultative report as support for Dr. Cable's
13   opinion, likewise, would also be misplaced in light of the subsequent
14   treatment record and subsequent objective and clinical findings of the
15   treating source.

16       Post-surgical records continued to demonstrate decreased
17   sensation [AR 312, 314, 321; see also AR 317], and atrophy was noted

18

19       [6] As support for his conclusion as to the lack of clinical
findings, Dr. Cable cited an October 17, 1997, treatment note which
20   indicated that the range of motion was intact, although there was pain
with extension of the neck.  Dr. Cable found that strength was normal
21   or near normal in the major groups of the right arm, and he noted that
sensation was intact.  Dr. Cable did admit, however, that reflexes
22   were diminished on the right.  [AR 216.]  Dr. Cable also cited a
December 14, 1997, treatment report which indicated that strength in
23   the upper extremities was 5/5 bilaterally, and that on May 1, 1998,
sensation was intact in the arms and reflexes were symmetric.  [AR
24   211.]  As noted by the plaintiff, no entry for December 14, 1997,
could be found in the record.  However, there is a report dated
25   November 14, 1997, which did indicate normal motor findings, but in
that report, sensation was decreased.  [AR 287.]  The findings on May
26   1, 1998, confirm Dr. Cable's testimony that sensation was intact and
reflexes were symmetric.  However, sensory deficits were noted on
27   November 14, 1997, February 18, 1998, and April 3, 1998.  [AR 287,
293, 297.]
28

- 16 -

1  in September and December, 1998, when the plaintiff was seen in
2  physical therapy [AR 317, 320].  Motor strength was still at 4/5 on
3  the right [AR 312, 314, 317, 318], until December 11, 1998, when it
4  was assessed to be 5/5 [AR 321].  At that time, the plaintiff's
5  treating physician indicted that the plaintiff was doing well and that
6  the plaintiff required follow up only as needed.  [AR 321.]

7  Therefore, substantial evidence does not support Dr. Cable's
8  overall assessment that there were no signs of atrophy or that
9  sensation had been normal during the entire period through December,
10 1998.

11 The period from December, 1998, until June, 2000

12 There is no record of treatment for orthopedic complaints in
13 1999.  Treatment resumed in June, 2000, when the plaintiff complained
14 of a one-year history of increasing numbness and weakness in the right
15 upper extremity.  At that time, the plaintiff denied any neck pain.
16 [AR 324.]  A third MRI performed in June, 2000, revealed the prior
17 fusion and mild narrowing of the C6-C7 neural foramen, but there was
18 no evidence of new or recurrent degenerative disc disease.  [AR 328.]

19 Clinical findings reveal one reference to decreased sensation [AR
20 324] and again, there is indication of right biceps atrophy [AR 324]
21 and supraspiratus and mild infraspiratus atrophy [AR 344], although
22 another examiner found no obvious atrophy [AR 332], and power was
23 consistently rated at 5/5 [AR 324, 329, 331, 332, 342].  The
24 plaintiff's treating physicians, moreover, indicated, as noted by Dr.
25 Cable, that there were no objective findings.  [AR 341; AR 225.]

26 The record, therefore, supports Dr. Cable's testimony that
27 following the plaintiff's surgery in May, 1998, by December, 1998, the
28 plaintiff's treating physicians "really thought he was doing well and

1  didn't need to be involved in any future care."  [AR 224; see AR 321;
2  see also AR 341.]  The record also supports Dr. Cable's conclusion
3  that for the period thereafter, there are no significant objective
4  findings.  [AR 341.]  The plaintiff likewise did not indicate to his
5  physicians that he could not work, indicating as he did in February,
6  2001, that he was interested in rehabilitation.  [AR 341.]  Because
7  Dr. Cable's testimony for this time period after December, 1998, is
8  consistent with the other evidence, it constitutes substantial
9  evidence upon which the ALJ could properly rely.

10      However, for the period prior to December, 1998, even granting
11  that it is difficult accurately to sum up years of treatment records
12  with varying findings, Dr. Cable's impressionistic assessment
13  essentially that there are no clinical findings is not based upon
14  substantial evidence considering the record as a whole.  Penny v.
15  Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).  The record as a whole does
16  not support Dr. Cable's conclusion that "the type of things that you
17  expect with nerve injury" such as "muscles shrink[ing]" and "signs of
18  atrophy or reflex change" or abnormal sensation were not present [AR
19  220], nor is Dr. Cable's opinion consistent with the other evidence of
20  record which indicates essentially that the objective and clinical
21  findings were sufficiently severe as to ultimately require surgery.
22  Accordingly, the matter requires remand for further proceedings for
23  reassessment of the plaintiff's residual functional capacity(ies)
24  during the entire period at issue.

25  **Other issues**

26      Because the matter requires remand for a re-evaluation of the
27  medical evidence for the period(s) involved and, therefore, a re-
28  evaluation of the residual functional capacity, further vocational

1  expert testimony may be required as well.  Accordingly, it is not
2  necessary to discuss the plaintiff's argument concerning the ALJ's
3  failure to pose a proper hypothetical question to the vocational
4  expert.  The plaintiff will have ample opportunity to pose whatever
5  questions are appropriate for the vocational expert.  Likewise, it is
6  not necessary to discuss the plaintiff's argument that the ALJ did not
7  comply with the previous Order of this court by failing to obtain a
8  medical source statement from the treating source, which, as the
9  plaintiff's counsel acknowledged at the hearing, was not practical or
10 likely to result in success.  [AR 260.]  If, on the other hand, the
11 plaintiff now believes that such information might be available, the
12 plaintiff should attempt to obtain such an assessment.

13                      **ORDER OF REMAND**

14      The Court has reviewed the pleadings, Joint Stipulation of the
15 parties, and the transcript of the record.  In accordance with the
16 foregoing discussion, the magistrate judge finds that good cause has
17 been shown for remanding the case to the Commissioner.

18      IT IS ORDERED that this case be remanded to the Commissioner of
19 the Social Security Administration pursuant to sentence four of 42
20 U.S.C. section 405(g) for further administrative proceedings
21 consistent with the reasons set forth herein.

23 Dated: July 13, 2005

                                JAMES W. McMAHON
24                              United States Magistrate Judge